Follett, Ch. J.
 

 Since January 31, 1882, the jDlaintiff has been seized in fee of a lot of land in the city of FTew York, extending from Pearl to Water street, which lot is 37 8-12 feet wide on Pearl and 34 5-12 feet wide on Water street. The westerly line of the lot is 105 11-12 feet in length and its easterly line is 101 11-12 feet in length. ' At the time of the trial of this action and since 1865 this lot has been occupied by a single brick, four story building, extending from street to street, and is known as Flo. 134 Pearl street and Flo. 100 Water street. It is covered by a single roof, without a transverse partition wall, and with but a single flight of stairs between the first and second stories.
 

 During seventy-six years before 1825 this property consisted of two lots owned by different proprietors, the one on Pearl street being about fifty feet in depth and the one on Water street about fifty-one feet in depth. In 1825 these lots became the property of one proprietor, since which they have been described, conveyed and used as a single lot abutting on both streets.
 

 When the defendants were incorporated and when the road was built and leased, the lot in question was owned by three tenants -in common, who on the 31st day of January, 1882, conveyed it to the plaintiff, since which date he has been the owner in fee and in possession.
 

 October 27, 1871, the FTew York Elevated Railroad Company was incorporated under chapter 140 of the Laws of 1850, and pursuant to that chapter and chapter 697 of the Laws of 1866, chapter 489 of the ’ Laws of 1867, chapters 595 and 606 of the Laws of 1875, and the consent of the city of FTew York, which owns the fee of the street, this corporation constructed in 1877 and 1878 its elevated road through Pearl street.
 

 December 29, 1875, the Manhattan Railway Company was incorporated pursuant to chapter 606 of the Laws of 1875, and on the 20th of May, 1878, became the lessee of the road and since that date has been in the exclusive possession and engaged in operating it.
 

 The defendants have not acquired the right to yse the plaintiff’s private rights to light, air and access which are incidents to his lot abutting on Pearl street
 

 
 *634
 
 January 26, 1888, this action was begun to recover (1) the damages (alleged to be $3,000 annually), to the rental value of the property occasioned by the wrongful impairment by the defendants of these street rights, and (2) a judgment restraining the defendants from continuing to use those right except on the payment of $20,000 damages for the past injuries and $50,000, the alleged value of the rights of which the plaintiff had been in part deprived by the construction and operation of the road.
 

 On the decision made at special term it was adjudged that the plaintiff was an abutting owner and as such entitled to recover $17,000, with the costs of the action, for the impairment of the rental value of the premises from January 31, 1882 (when he acquired title), to January 26, 1888 (when he began this action), and (2) that the defendants be restrained from operating the road after March 6, 1889, unless they should pay $20,000 adjudged to be the value of the rights impaired, upon the execution by the plaintiff of a proper conveyance of his street rights to the defendants. This judgment was affirmed at the general term and the defendants appealed to this court.
 

 The only ground urged as error by the appellants is based upon the assumption that the premises consisted of two independent lots, one fronting on Pearl street and the other on Water street, and that the plaintiff recovered damages for injuries to both. This assumption is without foundation. The plaintiff did not, in his complaint, describe the property as two separate lots. He alleged:
 

 “ I. That the plaintiff is now and has been since the 31st day of January, 1882, seized of an estate of inheritance in fee simple absolute in the premises known as No; 134 Pearl street and No. 100 Water street, in the city of New York.
 

 “ II. That the plaintiff is and has been since the 31st day of January, 1882, seized of an estate of inheritance in fee simple absolute in the premises described as follows, viz.: All those two certain lots, pieces or parcels of land, situate, lying and being in the First ward of the city of New York,
 
 with a brick store thereon
 
 which,
 
 taken
 
 together,
 
 extend from Pearl street to Water street."
 
 *********
 

 “ XVI. That said structure and railroad occupy and greatly obstruct Pearl street, adjoining the premises above described, and exclude the light and air from said premises and hinder access thereto.
 

 “XVII.- On information and belief, that the trains darken the offices facing on Pearl street and render what light there is fitful and uncertain.
 

 “XVIII. On information and belief, that the erection of said structure and the running of said trains thereon have created an additional burden on the premises above described and have interfered with the plaintiff’s rights and easements in Pearl street, and his rights to have the whole of Pearl street in front of said premises a free and open passageway, and to have light and air enter the building thereon, free from any obstruction in said street.”
 

 
 *635
 
 On the trial the plaintiff showed that the entire lot was then, and for many years had been occupied by a single brick building extending from street to street, but gave no evidence that the premises were occupied as independent parcels, one fronting on each street, nor does the decision of the trial court, or the judgment following it, proceed upon the theory that the plaintiff was entitled to recover for injuries occasioned to two independent lots. The decision and the judgment are to the effect that the property consisted of a single lot, which had been injured by the defendants. This property having been occupied as an entirety anterior to the time when the road was built, or authorized to be built, the defendants were not entitled to have the damages limited to that part of the property owned and occupied before 1825 as a single lot abutting on Pearl street.
 

 The fact that the building and lot were accessible to persons, property, light and air from two streets was important as bearing on the extent of the injuries occasioned by the occupation of one of the streets by the defendants, but it does not appear that this fact did not have due weight with the trial court.
 

 In
 
 Mooney
 
 v.
 
 The N. Y. Elevated R. R. Co.,
 
 30 N. Y. State Rep., 561, there were two independent and wholly unconnected buildings on the plaintiff’s lot, one fronting on Greenwich street, in which the railroad is, and the other on Beach street, in which there is no railroad. The building on Beach street fronts on and is entered and receives its light and air from that street. The trial court received evidence of, and gave judgment for the diminished rental value of the Beach street building, which was held to be error. In that case the light, air and access to the building on Beach street was in nowise interfered with by the railroad.
 

 In
 
 Greenwood
 
 v.
 
 Met. El. R. Co.,
 
 26 J. & S., 482; 35 N.Y. State Rep. 84, the plaintiff’s property fronted on Yesey street, and was sixty-four feet deep on Church street, in which the railroad was built This property was known as Nos. 31 and 33 Yesey street and was occupied by one building. Formerly, these lots were owned by different proprietors and occupied by distinct buildings. Whether these lots became the property of a single proprietor before or after the railroad was built, or whether the building which now covers them was built before or after the construction of the railroad, does not appear. In the case last cited lots 31 and 33 were, with other land, formerly owned by a single proprietor, who laid it out into lots and conveyed No. 31 to one purchaser, and after-wards conveyed No. 33 to another. It appears to have been conceded by the argument of the learned counsel for the railroad, as reported, that before the conveyance of No. 31 both it and No. 33 had appurtenant rights in Church street, but it was urged that when No. 31 was conveyed the right of No. 33 in that street was abandoned, cut off and destroyed. Undoubtedly these conveyances had that effect But it was urged that the reunion of these lots in the hands of a single proprietor did not restore to No. 33 the rights in Church street which it had before it was separated from No. 31 by the conveyance. This proposition was rested on
 
 *636
 
 the rule that when an easement, the right which the dominant estate has over the servient one, is abandoned or destroyed by the act of the owner of the dominant estate, that it cannot be restored or brought into existence without a new grant from the owner of the servient estate. It was also urged in support of the proposition that a reunion of the lots conferred no rights in Church street in favor of Ho. 33, because the owner of a dominant estate does not by the acquisition of adjacent land acquire the right to use the easement over the servient estate for the benefit of the newly acquired property. The illustration might have been carried' farther. A. owning a lot 25 by 100 feet covered with a building has a right of way to and from it over the land of B. Subsequently, A. buys an adjacent lot and covers both with a single building. He cannot use his right of way over the land of B. for his enlarged lot and new building because it would increase the burden of the servient estate. Would it be argued that the owner of Ho. 31 having rights in Church street, by adding Ho. 33 and covering it with a building lost all of his rights in that street? We think not.
 

 The characterization of these street rights as easements and implying that they are governed by the rules and are subject to the limitations of common law easements tends to obscure the rights of abutting owners on the one hand and of the corporations on the other. They may be easements in the sense that the owner of land has an easement for lateral support in adjacent land, or that the owner of land bordering on navigable waters having certain private rights to the shore is sometimes said to have an easement, but in neither case are the rights common law easements. There is no dominant nor servient estate, and the rules applicable to easements have not generally been applied to such rights. Goddard on Basements, 1,
 
 et seq.
 
 The judgment in the
 
 Greenwood
 
 case was rested on the ground that the street rights once appurtenant to both lots having been destroyed as to 33 by the prior conveyances of 31, they could not be restored by the subsequent reunion of both lots. This conclusion as applied to such rights as are under consideration, we think, cannot be supported.
 

 The defendants are liable for the damages done to the property in the condition in which it was when injured by them, and there is no rule of law or equity which entitles them to have the lot and building divided transversely by an arbitrary line or by the line of division which existed prior to 1825 so as to limit their liability for damages to the half of the property abutting on Pearl street.
 

 The judgment should be affirmed, with costs.
 

 All concur’.